# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Chad Nelson,

                  Plaintiff,

v.

Lucinda Jesson, Minnesota Department of
Human Services, State of Minnesota, Troy
Schlener, Carla Brown, Kristin Johnson,
Jerry Kerber, Michael Campion, and
Ramona Dohman,

                  Defendants.

Civ. No. 13-340 (RHK/JJK)
**MEMORANDUM OPINION AND ORDER**

Daniel J. Bellig, Joseph A. Gangi, William S. Partridge, Scott V. Kelly, Farrish Johnson Law Office, Chtd., Mankato, Minnesota, for Plaintiff.

Seth J. S. Leventhal, LEVENTHAL pllc, Minneapolis, Minnesota, for Defendant Troy Schlener.

Steven H. Alpert, Ricardo Figueroa, Minnesota Attorney General's Office, St. Paul, Minnesota, for all Defendants.

## INTRODUCTION

In this putative class action, Plaintiff Chad Nelson alleges Defendant Troy Schlener, while employed by Defendant Minnesota Department of Human Services ("DHS"), accessed his driver's license information and the information of approximately 1,100 others without authorization, in violation of federal and state law. Nelson asserts claims against Schlener, DHS, and the various supervisors, commissioners, and other governmental agencies that allowed Schlener access to his personal information. All

Defendants now move to dismiss; for the reasons that follow, Schlener's Motion will be granted in part and denied in part, and the other Defendants' Motion will be granted.

## BACKGROUND

The following facts are alleged by Nelson in his Second Amended Complaint:

In July 2011, Nelson received a letter from DHS informing him that "a DHS employee accessed [his] Minnesota Department of Vehicle Service ('DVS') records without authorization." (Compl. Ex. 1.) DVS records include such information as a person's full name, address, birthdate, driver's license number, driver's license status, height, weight, eye color, and driver's license photo. (2d Am. Compl. ¶ 15.) They do not include social security numbers or any financial information. (Compl. Ex. 1.) DHS's July 25 letter informed Nelson that "[t]he records of approximately 1,100 Minnesotans were viewed over the course of eleven months" and that an audit "did not uncover any evidence that there was distribution, sale, or further disclosure of" the records. (Id.) Although the letter does not disclose the name of the individual responsible, Nelson alleges it was Troy Schlener, who was employed in the Licensing Division of DHS at the time and has since been terminated. (2d Am. Compl. ¶ 4.)

A year and a half later, Nelson commenced this action on his own behalf and on behalf of all others similarly situated. He asserts claims against Schlener; DHS; the State of Minnesota ("the State"); Carla Brown and Kristin Johnson, Schlener's supervisors; Jerry Kerber, the Director of the Licensing Division of DHS; Lucinda Jesson, the Commissioner of DHS; and Michael Campion and Ramona Dohman, the Commissioners of the Minnesota Department of Public Safety ("DPS") during the relevant time period.

He asserts violations of the federal Driver's Privacy Protection Act, 18 U.S.C. § 2721 et seq. ("DPPA"), Minnesota's Government Data Privacy Act, Minn. Stat. § 13.01 et seq. ("MGDPA"), his constitutional rights, and his common-law right to privacy. Defendants now move to dismiss Nelson's claims; Schlener moves individually and all other Defendants move jointly. The Motions have been fully briefed, the Court heard oral argument on September 20, 2013, and the Motions are now ripe for disposition.

**STANDARD OF DECISION**

The Supreme Court set forth the standard for evaluating a motion to dismiss in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 547. A "formulaic recitation of the elements of a cause of action" will not suffice. Id. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).

When reviewing a motion to dismiss, the Court "must accept [the] plaintiff's specific factual allegations as true but [need] not . . . accept a plaintiff's legal conclusions." Brown v. Medtronic, Inc., 628 F.3d 451, 459 (8th Cir. 2010) (citing Twombly, 550 U.S. at 556). The complaint must be construed liberally, and any allegations or reasonable inferences arising therefrom must be interpreted in the light most favorable to the plaintiff. Twombly, 550 U.S. at 554–56. A complaint should not be dismissed simply because the Court is doubtful that the plaintiff will be able to prove

all of the necessary factual allegations. Id. at 556. Accordingly, a well-pleaded complaint will survive a motion to dismiss even if recovery appears unlikely. Id. "Finally, the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009).

## ANALYSIS

**I.     DPPA**

The DPPA restricts the use and distribution of personal information contained in motor-vehicle records. The statute does not prescribe methods for collecting, handling, or storing personal information; it merely prohibits persons from obtaining, using, or disclosing such information for any purpose not approved under the statute. It was enacted in 1994 in response to public concern over the accessibility of such information and the attendant danger that it would be misused. An often cited example of such danger is the 1989 murder of actress Rebecca Schaefer by a stalker who obtained her unlisted home address from the California Department of Motor Vehicles. E.g., Maureen Maginnis, *Maintaining the Privacy of Personal Information: The DPPA and the Right of Privacy*, 51 S.C. L. REV. 807, 809 (2000).

The statute provides a limited private right of action, authorizing suit against "a person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under" the statute. 18 U.S.C. § 2724(a). Nelson asserts Schlener, Jesson, Campion, and Dohman violated the DPPA and brings a

claim against them under this section. Nelson alleges two distinct violations—one by Schlener and one by the other three Defendants.

First, Nelson alleges Schlener used his position at DHS to access his and 1,100 others' motor-vehicle records through queries made for impermissible purposes under the DPPA and without authorization or consent. Schlener moves to dismiss, arguing that "accessing" or viewing confidential information through queries does not constitute "obtaining," "disclosing," or "using" it and is therefore not prohibited by the DPPA. Schlener contends that "obtaining" information requires possessing or acquiring it in a physical or tangible sense—for example, printing the information or copying it down. But information itself is not tangible so the Court sees no reason why its possession or acquisition would need to be. In the Court's view, information may be "obtained" simply through viewing. See Smythe v. City of Onamia, No. 12-cv-03149, 2013 WL 2443849, at *6 (D. Minn. June 5, 2013) (Montgomery, J.) (the "simple act of retrieval, without any further action, would violate the DPPA."); Luparello v. Inc. Vill. of Garden City, 290 F. Supp. 2d 341, 344 (E.D.N.Y. 2003) (a plaintiff must show "that the defendants caused a DMV search to be made" and "that the search was not permitted by any exception to the DPPA" in order to establish a claim).

By accessing Nelson's motor-vehicle records, Schlener may have acquired personal information, such as Nelson's address, that he could use or transmit to others, *even though* he did not possess the information in any physical sense. This potential for misuse or dissemination of personal information is precisely what the statute intends to constrain. Thus, to accomplish the statute's purpose, "obtaining" personal information

- 5 -

must include accessing and viewing it through queries. This interpretation of the DPPA's prohibition on "obtaining" information comports with recent Supreme Court precedent, which narrowly construed an exception to the DPPA in order to "preserve [its] primary operation"—namely, protecting personal privacy—and give the statute broader effect. Maracich v. Spears, 133 S. Ct. 2191, 2200 (2013).

Second, Nelson alleges Commissioners Jesson, Campion, and Dohman violated the DPPA by allowing Schlener "unfettered access" to the motor-vehicle-record database. Specifically, he asserts these Defendants "unlawfully disclosed [his and others'] motor vehicle records by knowingly making that private information available to Defendant Schlener and others without appropriate safeguards to ensure that the private information would be accessed solely for lawful purposes." (2d Am. Compl. ¶ 44.) These Defendants move to dismiss, asserting their alleged conduct is not actionable under the DPPA.

Although these Defendants advance several arguments in support of their contention, the Court need only address one: Nelson has not sufficiently alleged an impermissible purpose. Assuming for the sake of argument these Defendants *did* disclose Nelson's personal information by giving Schlener access to the database, they must have done so "for a purpose not permitted under [the statute]" in order to be liable under the DPPA. 18 U.S.C. § 2724(a). It is not enough that they disclosed information to Schlener and *he* acted with an impermissible purpose, the Commissioners *themselves* must have acted with such a purpose. This is the only possible interpretation, given the plain language of the statute. See Kiminski v. Hunt, Civ. No. 13-185, slip op. at 14 (D.

Minn. Sept. 20, 2013) (Ericksen, J.) (analyzing the grammatical structure of statute's text and reaching the same conclusion). Because Nelson alleges no facts indicating Jesson, Campion, and Dohman granted Schlener access to the database for an impermissible purpose, his claim against them will be dismissed.

## II.     Section 1983 Claims

Nelson asserts claims under 42 U.S.C. § 1983, alleging Defendants Schlener, Brown, Johnson, Kerber, Jesson, Campion, and Dohman deprived him of his privacy rights, as secured by the DPPA and the U.S. Constitution.

### A.     Constitutional Privacy Right

Nelson asserts Defendants violated his Fourth and Fourteenth Amendment rights by accessing or allowing employees access to his personal information.

First, he alleges Defendants' conduct and policies violated his constitutionally protected right of privacy. The Supreme Court has recognized that individuals have a right of privacy "founded in the Fourteenth Amendment's concept of personal liberty." Whalen v. Roe, 429 U.S. 589, 599 n.24 (1977) (citing Roe v. Wade, 410 U.S. 113, 152–53 (1973)). This right encompasses "the individual interest in avoiding disclosure of personal matters." Id. at 599. In Whalen, the Supreme Court considered whether a New York statute requiring the government to collect and store information regarding patients prescribed controlled substances infringed on this right to privacy. Id. The Court weighed the sensitive nature of the information stored against the government's interest in collecting it and the safeguards established to protect against its disclosure. Id. at 600–04. The Court—"[r]ecognizing that in some circumstances" a state's duty to avoid

unwarranted disclosures of personal information "arguably has its roots in the Constitution"—held that New York's law "evidence[d] a proper concern with, and protection of, the individual's interest in privacy" and therefore did not violate the Fourteenth Amendment. Id. at 605.

The Eighth Circuit, interpreting Whalen and its progeny, has articulated its own standard for what sort of violation rises to the level of a constitutional harm. "[T]o violate [one's] constitutional right of privacy the information disclosed must be either a shocking degradation or an egregious humiliation . . . to further some specific state interest, or a flagrant bre[a]ch of a pledge of confidentiality which was instrumental in obtaining the personal information." Alexander v. Peffer, 993 F.2d 1348, 1350 (8th Cir. 1993); accord Cooksey v. Boyer, 289 F.3d 513, 516 (8th Cir. 2002). Nelson argues that motor-vehicle records are protected because they contain "social security numbers," "health related" information, and "financial matters." Such records could be constitutionally protected as "highly personal medical or financial information," under Alexander, 993 F.2d at 351, but Nelson's pleadings belie any such conclusion. He has not alleged that his records contained medical information and his letter from DHS specifically states the records did *not* include social security numbers or financial information. (See Compl. Ex. 1.) Absent an allegation of more sensitive personal information, the Court cannot conclude that the disclosure of Nelson's motor-vehicle records would constitute either a "shocking degradation" or an "egregious humiliation." See also Wiles v. Ascom Transport Sys., Inc., 478 Fed. App'x 283, 295 (6th Cir. 2012) (alleged DPPA violation did not rise to level of constitutional harm because the

information was not "of a sexual, personal, and humiliating nature" nor could its release "lead to bodily harm").

Nelson also contends the (alleged) disclosure of his information constitutes a flagrant breach of a pledge of confidentiality. He argues "the DPPA itself is a pledge of confidentiality which is instrumental in obtaining driver[s'] personal information." (Pl.'s Mem. in Opp'n to State Defs.' Motion at 15.) Even assuming the state pledged confidentiality in order to obtain his personal information, the Court is not persuaded that the (alleged) breach of that pledge was sufficiently flagrant to rise to the level of a constitutional violation. As in Whalen, the safeguards implemented by Defendants here must be viewed in the context of the information to be protected. More sensitive information requires more stringent protection. The information Nelson alleges was disclosed—his "name, date of birth, driver's license number, address, driver's license status, driver's license photo, weight, height, and eye color"— while personal, is not particularly sensitive. (2d Am. Compl. ¶ 15.) Although Nelson likens Defendants' policy of allowing access to the motor-vehicle-record database to "setting a box of personal private documents regarding Minnesota citizens on a street corner," this assertion is not supported by his allegations. (Pl.'s Mem. in Opp'n to State Defs.' Motion at 9–10.) His Complaint alleges the database was made available to state employees "without appropriate safeguards to ensure [it] would be accessed solely for lawful purposes," that is, without sufficient training or supervision. (2d Am. Compl. ¶ 27; see also id. ¶ 62.) As alleged, Defendants' policy is more akin to keeping the records in a file

cabinet for which only state employees have a key. Such "disclosure" of Nelson's information is not a *flagrant* breach of confidentiality (if a disclosure at all).

Second, Nelson alleges Schlener's searches of his private information in the motor-vehicle-record database violated his right to be free from unreasonable searches under the Fourth Amendment. The Fourth Amendment, as applied to the states through the Fourteenth Amendment, protects persons against unreasonable searches and seizures by the government. An intrusion is considered a "search" for Fourth Amendment purposes if it violates a person's "reasonable expectation of privacy." E.g., Arnzen v. Palmer, 713 F.3d 369, 372 (8th Cir. 2013).

Here, Nelson alleges that Schlener violated his reasonable expectation of privacy by conducting an unlawful search of his motor-vehicle records. But "the Supreme Court . . . has [n]ever found a constitutional right to privacy with respect to the type of information found in motor vehicle records. Indeed, this is the very sort of information to which individuals do *not* have a reasonable expectation of privacy." Condon v. Reno, 155 F.3d 453, 464–65 (4th Cir. 1998) (footnote omitted), rev'd on other grounds by Reno v. Condon, 528 U.S. 141 (2000) [1]; accord Pryor v. Reno, 171 F.3d 1281, 1288 n.10 (11th Cir. 1999), rev'd on other grounds by Condon, 528 U.S. 141 ("[A]n individual does not have a reasonable expectation that the information [contained in motor vehicle records] is confidential."). As the Fourth Circuit explained in Condon, there are several reasons for

---

[1] Although Condon addressed whether there is a "constitutional right to privacy" under the Fourteenth Amendment, not the Fourth, it did so by examining whether the plaintiff had a "reasonable expectation of privacy." 155 F.3d at 464–65. Because this language mirrors the standard for unreasonable searches under the Fourth Amendment, Condon's analysis is persuasive.

a reduced expectation of privacy in this information. "First, pervasive schemes of regulation, like vehicle licensing, must necessarily lead to reduced expectations of privacy. Second, the same type of information is available from numerous other sources" such as public property tax records. 155 F.3d at 465. "Third, . . . there is a long history in the United States of treating motor vehicle records as public records." Id. "Finally, such information is commonly provided to private parties" by presenting them with one's driver's license "to cash a check, use a credit card, board an airplane, or purchase alcohol." Id. Like the Fourth Circuit, this Court "seriously doubt[s]" whether an individual has a reasonable expectation of privacy in any information "routinely shared with strangers." Id. For these reasons, there is no reasonable expectation of privacy in the information Nelson alleges was contained in his records. Therefore, Nelson has not alleged sufficient facts to support a § 1983 claim for the violation of his constitutional rights.

### B. Statutory Privacy Right

Nelson also premises his § 1983 claims on the violation of a statutory right to privacy, under the DPPA. "Section 1983 provides a federal cause of action against anyone who, acting pursuant to state authority, violates any 'rights, privileges or immunities secured by the Constitution and laws' of the United States." Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs., 293 F.3d 472, 477 (8th Cir. 2002) (quoting 42 U.S.C. § 1983). Thus, a plaintiff may sue under § 1983 for the violation of an individual right bestowed by federal statute, as well as by the Constitution. Maine v. Thiboutot, 448 U.S. 1, 4 (1980). A plaintiff establishes an individual statutory right by

demonstrating that: "(1) Congress intended the statutory provision to benefit the plaintiff; (2) the asserted right is not so 'vague and amorphous' that its enforcement would strain judicial competence; and (3) the provision clearly imposes a mandatory obligation upon the states." Midwest Foster Care & Adoption Ass'n v. Kincade, 712 F.3d 1190, 1195 (8th Cir. 2013) (quoting Blessing v. Freestone, 520 U.S. 329, 340 (1997)) (additional quotation omitted). If the plaintiff satisfies this three-part test, it is presumed the plaintiff may enforce the right through § 1983. Id. at 1196. A defendant may rebut this presumption by showing Congress foreclosed the use of § 1983. Id.

Nelson asserts the DPPA confers an individual right to privacy in the personal information contained in motor-vehicle records and he seeks redress for Defendants' alleged violation of that right through § 1983. Defendants do not dispute whether the DPPA confers an individual right on Nelson, although they do not expressly concede it either. Instead, they argue their alleged conduct did not violate any of Nelson's rights under the DPPA and, even if it did, that Congress did not intend a § 1983 remedy for DPPA violations. Assuming without deciding that the DPPA confers an individual right to privacy and that at least some Defendants violated that right, the critical question, then, is whether Nelson may seek relief through § 1983 in addition to the DPPA's own enforcement scheme, which includes a private right of action.

Evidence that Congress intended to foreclose a § 1983 remedy "may be found directly in the statute creating the right, or inferred from the statute's creation of a 'comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.'" City of Rancho Palos Verdes v. Abrams, 544 U.S. 113, 120 (2005)

(quoting Blessing, 520 U.S. at 341). The DPPA does not explicitly foreclose a § 1983 remedy, but Defendants argue that its "comprehensive enforcement scheme" does so implicitly. A statute's provision of a private judicial remedy for its violation that is more limited than § 1983 is strong evidence of such implicit foreclosure. See Alexander v. Sandoval, 532 U.S. 275, 290 (2001) ("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."). The Supreme Court has held that a statutory enforcement scheme implicitly foreclosed a § 1983 remedy and in each of those cases, the statute at issue provided for a private judicial remedy more restrictive than § 1983. Rancho Palos Verdes, 544 U.S. at 122; Smith v. Robinson, 468 U.S. 992, 1012 (1984), superseded by statute, 20 U.S.C. § 1415(l); Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n, 453 U.S. 1, 15 (1981). "Thus, the existence of a more restrictive private remedy for statutory violations has been the dividing line between those cases in which we have held that an action would lie under § 1983 and those in which we have held that it would not." Rancho Palos Verdes, 544 U.S. at 121.

The underlying assumption is "that limitations upon the remedy contained in the statute are deliberate and are not to be evaded through § 1983." Id. at 124. For example, in Rancho Palos Verdes, the Court considered the Telecommunications Act's ("TCA") enforcement scheme incompatible with § 1983 because it provided for a shorter statute of limitations and, unlike § 1983, it did not provide for the award of compensatory damages or attorney's fees or costs and it mandated that the court consider actions under the TCA on an expedited basis. Id. at 123–24. Allowing a plaintiff to simply sidestep a statute's

enforcement scheme, like the TCA's, via § 1983 would render the carefully chosen contours of the statute's own remedies senseless. See Smith, 468 U.S. at 1011–12 (allowing enforcement through § 1983 would "render superfluous most of the detailed procedural protections outlined in the statute"); Sea Clammers, 453 U.S. at 20 ("[W]hen a state official is alleged to have violated a federal statute which provides its own comprehensive enforcement scheme, the requirements of that enforcement procedure may not be bypassed by bringing suit directly under § 1983.") (quotation omitted).

The incompatibility of § 1983 and a statute's own, more restrictive remedy is plainly illustrated in the instant case. The DPPA provides a private right of action against *individuals* for violations, but not against a state, its agencies, or—by extension—state employees in their official capacities. 18 U.S.C. §§ 2722, 2725(2). Only the Attorney General is authorized to hold non-complying states accountable, and even then, the Attorney General is limited to levying a civil penalty of $5,000 for each day of substantial noncompliance. § 2723(b). Thus, states and their agencies and officials cannot be held liable for compensatory damages or injunctive relief under the DPPA. And yet, that is precisely what Nelson seeks to do in his § 1983 claim. He asks for "prospective injunctive relief" against the three Commissioners, which he asserts against them "in their official capacities." (2d Am. Compl. ¶¶ 73, 76.) Although Defendants point out several ways in which § 1983 is *different* from the DPPA's enforcement scheme, this is the most important because it evinces how § 1983 is *incompatible* with it.

The Court recognizes that there has been a split of authority on this issue, both among circuits and among district courts within the Eighth Circuit. Compare Collier v.

Dickinson, 477 F.3d 1306, 1311 (11th Cir. 2007) (allowing § 1983 enforcement of DPPA) and Arrington v. Richardson, 660 F. Supp. 2d 1024, 1028–29 (N.D. Iowa 2009) (same) with Kiminski v. Hunt, Civ. No. 13-185, slip op. at 22 (D. Minn. Sept. 20, 2013) (Ericksen, J.) (holding § 1983 enforcement of DPPA implicitly foreclosed), Kraege v. Busalacchi, 687 F. Supp. 2d 834, 840 (W.D. Wis. 2009) (same), and Roberts v. Source for Pub. Data, 606 F. Supp. 2d 1042, 1046 (W.D. Mo. 2008) (same). This Court joins Kiminski, Kraege, and Roberts in holding that the DPPA's remedial scheme, which is both comprehensive and more restrictive than § 1983, expresses Congress's intent to preclude other means of enforcement. In the absence of any contrary indication in the DPPA's text, "we are compelled to conclude that Congress provided precisely the remedies it considered appropriate." Sea Clammers, 453 U.S. at 15; see also Rancho Palos Verdes, 544 U.S. at 122 ("The ordinary inference that the remedy provided in the statute is exclusive can surely be overcome by textual indication, express or implicit, that the remedy is to complement, rather than supplant, § 1983.").

### III. MGDPA

The MGDPA "regulates the collection, creation, storage, maintenance, dissemination, and access to government data in government entities," including confidential data on individuals. Minn. Stat. § 13.01, subd. 3. Nelson alleges the State, DHS, and Jesson and Schlener in their individual and official capacities violated the MGDPA by obtaining or disclosing his motor-vehicle records and by failing to implement measures to prevent the misuse of motor-vehicle records. In response, Defendants assert Eleventh Amendment immunity shields the State, DHS, and Jesson and

Schlener in their official capacities from suit under the MGDPA in federal court. Although Nelson contends Minnesota has consented to suit in federal court for MGDPA violations, see § 13.08, subd. 1, and the Eleventh Amendment does not apply, he has nonetheless agreed to dismiss this claim against them. (Pl.'s Mem. in Opp'n to State Defs.' Motion at 28 & n.7.) He has also agreed to dismiss this claim against Schlener and Jesson in their individual capacities because the MGDPA does not permit suit against individuals, see § 13.08, subd. 1. (Pl.'s Mem. in Opp'n to Schlener's Motion at 9.)

## IV.  Common-Law Invasion of Privacy

Finally, Nelson asserts Schlener[2] intruded upon his seclusion by accessing or allowing access to his motor-vehicle records. Minnesota recognizes the tort of invasion of privacy, which includes "intrusion upon seclusion." A person commits this tort if he or she "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns" and "the intrusion would be highly offensive to a reasonable person." Lake v. Wal-Mart Stores, Inc., 582 N.W.2d 231, 233 (Minn. 1998). In making a preliminary determination whether an alleged intrusion may be considered "highly offensive," Minnesota courts consider "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion, as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of whose privacy is invaded." Id. For example, obtaining private medical information of another through improper means, Swarthout v. Mut. Serv. Life Ins. Co., 632 N.W.2d 741, 745

---

[2] Nelson also asserted this claim against DHS and the State, but he has agreed to dismiss it as to those Defendants on Eleventh Amendment grounds.

(Minn. Ct. App. 2001), and circulation of a plaintiff's nude photograph, Lake, 582 N.W.2d at 233, clear the threshold for conduct that a reasonable person might consider highly offensive.

Driver's license information, on the other hand, does not. Both the expectation of privacy and the sensitive nature of the information are substantially less in a person's driver's license information than in medical records, much less nude photographs. Minnesotans frequently produce their driver's licenses to strangers upon request and without hesitation to confirm their identification and/or age—to bartenders, store clerks, employers, and police, to name a few. Moreover, much of the information contained in the records Schlener allegedly accessed is public—a person can ascertain another's likeness, height, weight, and eye color upon viewing him or her and may be able to ascertain another's driver's license status or address through public records. Notably, there is no allegation here that the motor-vehicle records contained social security numbers, financial or medical information, or any other highly sensitive information. While the unauthorized access of another's motor-vehicle records is no doubt an intrusion into another's private affairs, no reasonable person could consider the intrusion in this case highly offensive.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Schlener's Motion to Dismiss (Doc. No. 30) is **GRANTED IN PART** and **DENIED IN PART**, and the other Defendants' Motion to Dismiss (Doc. No. 28) is **GRANTED**, as follows:

(1) Count One (DPPA) of the Second Amended Complaint (Doc. No. 17) is **DISMISSED WITHOUT PREJUDICE** as to Jesson, Campion, and Dohman;

(2) Counts Three and Four (§ 1983) of the Second Amended Complaint are **DISMISSED WITHOUT PREJUDICE**;

(3) Count Five (MGDPA) of the Second Amended Complaint is **DISMISSED WITHOUT PREJUDICE** as to the State of Minnesota and DHS and **DISMISSED WITH PREJUDICE** as to the Schlener and Jesson; and

(4) Count Six (Common Law Invasion of Privacy) of the Second Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.

Only Counts One and Two remain pending against Defendant Schlener. All other Defendants and Counts are dismissed.

Dated: November 1, 2013

                                                   s/Richard H. Kyle
                                                   RICHARD H. KYLE
                                                   United States District Judge